# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**DAVID D.,**[1]

      **Plaintiff,**

          **v.**

**MARTIN O'MALLEY,**
**Commissioner of Social Security,**

      **Defendant.**

              **Case No. 3:22-cv-6413**
              **Magistrate Judge Norah McCann King**

## <u>OPINION AND ORDER</u>

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff David D. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

[2] Martin O'Malley, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

## I.    PROCEDURAL HISTORY

Plaintiff filed his applications for disability insurance benefits and supplemental security income on June 8, 2020, and June 18, 2020, respectively, alleging that he has been disabled since May 14, 2020. R. 117–20,  239–44, 257–70, 272–78. The applications were denied initially and upon reconsideration. R. 142–47, 160–67. Plaintiff sought a *de novo* hearing  before an administrative law judge ("ALJ"). ALJ Kenneth Ayers held a hearing on July 2, 2021, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 19–20, 39–63. In a decision dated July 29, 2021, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 14, 2020, Plaintiff's alleged disability onset date, through the date of that decision. R. 19–32. That decision became final when the Appeals Council declined review on September 13, 2022. R. 4–10. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 10, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 12.[3] On August 14, 2023, the case was reassigned to the undersigned. ECF No. 13. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of

social security disability cases ceases to be merely deferential and becomes instead a sham.");
*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,
2016).  The Court has a duty to "review the evidence in its totality" and "take into account
whatever in the record fairly detracts from its weight."  *K.K.*, 2018 WL 1509091, at *4 (quoting
*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted));
*see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists
only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is
overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or
"ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of
Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see
K.K.*, 2018 WL 1509091, at *4.  The ALJ's decision thus must be set aside if it "did not take into
account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp.
at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular
format in conducting [the] analysis," the decision must contain "sufficient development of the
record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d
501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.
2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an
expression of the evidence s/he considered which supports the result, but also some indication of
the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121
("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication
of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing
*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

4

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

## B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc.*

*Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the

plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements for Disability Insurance Benefits through December 31, 2023. R. 22. He was 52 years old on May 14, 2020, his alleged disability onset date. R. 30. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 22.

At step two, the ALJ found that Plaintiff's spine disorder, obesity, depressive disorder, anxiety disorder, and substance abuse disorder were severe impairments. *Id*. The ALJ also found that Plaintiff's hypertension and colitis were not severe and that his alleged leg pain was not medically determinable. R. 22–23.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 23–25.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 25–30. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a truck driver. R. 30.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.*, approximately 104,810 jobs as a routing clerk, approximately 12,986 jobs as a mail clerk, and approximately 21,832 jobs as a laundry worker—existed in the national economy and could be performed by Plaintiff despite his lessened capacity. R. 31–32. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from May 14, 2020, his alleged disability onset date, through the date of the ALJ's

decision. R. 32.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Memorandum of Law,* ECF No.9; *Plaintiff's Reply Brief*, ECF No. 11. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 10.

## IV.    SUMMARY OF RELEVANT MEDICAL EVIDENCE

### A.    Ronald Bagner, M.D.

On October 22, 2020, Ronald Bagner, M.D., conducted a consultative examination of Plaintiff and evaluated Plaintiff's range of motion. R. 616–19. Dr. Bagner found as follows:

> Vital Signs: Height 64 inches, weight 199 pounds. Pulse 78, respirations 16, and blood pressure 142/90. General Appearance: This is a 53-year-old male, *who ambulates with a cane. He ambulates slowly. He ambulates with moderate difficulty. He gets on and off the examining table without difficulty. He gets dressed and undressed without assistance.* He is not uncomfortable in the seated position during the interview. *Cervical: There is normal flexion, extension, lateral flexion, and lateral rotation.* Biceps, triceps, and brachioradialis reflexes are l+ bilaterally. *There is no motor or sensory abnormality in the upper extremitie*s. Upper Extremities: Shoulders, elbows, forearms, wrists, and fingers show a normal range of movement. The patient can make a fist and can oppose the thumbs. The grips are rated as 5/5 bilaterally. Back: There is 0-40 degrees of flexion. Extension is 0-10. Lateral flexion to the left and to the right 0-20 degrees bilaterally. Pain on movement of the lower back. There is no pain on straight leg raising. The knee and ankle reflexes are 2+ bilaterally. There is no atrophy of the thigh or calf musculature. *There is no motor or sensory abnormality in the lower extremities*. Lower Extremities: *The hips show a normal range of movemen*t. Left knee is stable, shows a normal range of movement. There is no effusion or localized tenderness. Pain on movement of the left knee. The right knee is stable, shows a normal range of movement. No effusion or localized tenderness. Pain on movement of the right knee. *The ankles show a normal range of movement*.

R. 616–17 (emphasis added). Dr. Bagner further noted:

> *The patient ambulates with a cane. He ambulates slowly, ambulates with moderate difficulty. He gets on and off the examining table without difficulty. He gets dressed and undressed without assistance.* He is not uncomfortable in seated position during the interview. *The patient can ambulate <u>without</u> the cane.* Pain on movement of the lower back and range of motion of the lower back as noted. No pain on straight leg raising. Pain on movement in the knees and the knees show a normal range of movement. There is no atrophy. No sensory abnormalities. The reflexes are as noted. Normal range of movement in the cervical area. The grips are as noted above.

R. 617. (emphasis added). Dr. Bagner's impression was degenerative arthritis. *Id*. Dr. Bagner went on to complete a passive range of motion chart, noting first that Plaintiff had full grip and pinch strength in his hands and fingers; could fully extend his hands; could make a fist with his hands; could oppose the fingers on his hands; could separate paper with his hands; and could button buttons with his hands. R. 618. Plaintiff's straight leg raising test was negative bilaterally in both the supine and sitting positions. R. 619. Plaintiff had no sensory or reflex loss in his legs, but could not squat or walk on his heels or toes. *Id*. had 5/5 muscle strength. *Id*. Plaintiff could not walk at a reasonable pace and used a cane. *Id*. However, Dr. Bagner did not indicate whether the cane had been prescribed and, if so, who had prescribed the cane and on what type of terrain the cane was to be used; moreover, Dr. Bagner stated that Plaintiff could ambulate *without* a cane. *Id*.

**B.    Mala Kailasam, M.D.**

On May 4, 2020, Mala Kailasam, M.D., Plaintiff's treating physician, completed a three-page, check-the-box, and fill-in-the-blank preprinted form with New Jersey Work First letterhead. R. 868–70 (Exhibit 11F/53–55) ("Dr. Kailasam's May 2020 opinion") (reflecting, *inter alia*, that the completed form was to be sent to the Mercer County Board of Social Services). Dr. Kailasam first examined Plaintiff on December 11, 2018, and had examined him most recently on May 4, 2020. R. 869. She diagnosed prolapsed lumbar intervertebral disc at L4-

5, L5-S1. *Id*. According to Dr. Kailasam, Plaintiff had no limitations in his ability to climb, push/pull, and lift; he could use his hands, hear, and see for 6 to 8 hours a day; and could sit, stand, walk, bend, and squat for 3 to 6 hours a day. *Id*. She opined that Plaintiff was temporarily incapacitated until May 1, 2021. R. 870.

On April 16, 2021, Dr. Kailasam completed the same three-page, preprinted, opinion form. R. 812–14 (Exhibit 10F/2–4) ("Dr. Kailasam's April 2021 opinion"). Dr. Kailasam diagnosed a prolapsed lumbar intervertebral disc, chronic low back pain, multiple joint pain, polysubstance abuse, hypertension, and opioid dependence. R. 813 (noting dates of onset as "04/23/2019, 12/11/2018, 07/22/2020, 12/20/2018, 12/11/2018"). According to Dr. Kailasam, Plaintiff had no limitations in his abilities to see and hear, could sit, stand, walk and use his hands for 1 to 3 hours per day, but could not bend, squat, climb, push/pull, or lift. R. 813. Dr. Kailasam expressly stated that Plaintiff was permanently disabled. R. 814.

On June 24, 2021, Dr. Kailasam completed a four-page, check-the-box, and fill-in-the-blank form entitled, "Treating Source Statement – Physical Conditions." R. 1099–1102 (Exhibit 13F/7–10) ("Dr. Kailasam's June 2021 opinion"). Dr. Kailasam had treated Plaintiff every month for three years; she diagnosed prolapsed lumbar intervertebral disc, chronic low back pain, and multiple joint pain. R. 1099.  Dr. Kailasam opined that Plaintiff was likely to be off task more than 25% of a typical workday, could maintain attention and concentration for less than one hour before requiring a break due to symptoms such as pain or medication side effects, and was likely to be absent from work four or more days per month as a result of his impairments and/or treatment. *Id*. As a result of his prolapsed lumbar intervertebral disc and multiple joint pain, Plaintiff could frequently (meaning 24% to 66% of an 8-hour workday) lift and carry 10 pounds; could rarely (meaning 1% to 5% of an 8-hour workday) lift and carry up to 50 pounds; and could

10

never (meaning not even once in an 8-hour workday) lift and carry 100 pounds. R. 1099–1100. Plaintiff's legs should be elevated when sitting and he required the option to sit down or recline throughout the workday and would need to do so for a period of time of "less than an hour" every "less than an hour[.]" R. 1100. Asked whether Plaintiff sometimes required a cane and whether he required a cane or other assistive device to ambulate effectively (defined as capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living), Dr. Kailasam answered in the affirmative. R. 1100–01. Dr. Kailasam specified that Plaintiff needed a cane but that he could walk 5 feet without the cane. R. 1101. Dr. Kailasam opined that Plaintiff could frequently use his arms/hands to finger and feel; could occasionally (meaning from 6% to 33% of an 8-hour workday) use his arms/hands to reach overhead; and could rarely use his arms/hands to reach in all other directions, push/pull, and handle. R. 1099, 1101. Plaintiff could frequently operate foot controls with his feet, R. 1101, and rotate his head and neck, could occasionally stoop and crawl, and could rarely kneel and crouch, but could never climb ladders and scaffolds or balance, R. 1102. Plaintiff could occasionally operate a vehicle and be exposed to extreme heat and could rarely be exposed to vibrations; but could never be exposed to unprotected heights, moving mechanical parts, humidity and wetness, dust/odors/fumes/pulmonary irritants, and extreme cold. *Id.*

## V.    DISCUSSION

### A.    RFC Determination

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift twenty pounds occasionally and ten pounds frequently; carry twenty pounds occasionally and ten pounds frequently;

> sit for six hours; stand and/or walk four hours combined; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance (as defined in the SCO and DOT); and occasionally stoop, kneel, crouch, and crawl. He can never work at unprotected heights or around hazardous moving mechanical part. The claimant is limited to performing simple, routine tasks and can make simple work-related decisions.

R. 25. Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to explain why he implicitly found that Plaintiff's use of an assistive device was unnecessary. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 12–17; *Plaintiff's Reply Brief*, ECF No. 11, pp. 1–7. Plaintiff's arguments are not well taken.

A claimant's RFC is the most that the claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In finding that the ALJ had the RFC for a limited range of light work, the ALJ detailed years of record evidence regarding Plaintiff's physical impairments, including, *inter alia*,

Plaintiff's hearing testimony that he uses a cane; his history of lumbar disc disease, which was reflected in reports of lower back pain and cramping of the back; rheumatology progress notes during the period at issue that generally reflect Plaintiff's reports of back pain and swelling of the joints in his hands; physical examinations conducted in June and August 2020 that showed tenderness over the 2nd and 3rd metacarpophalangeal joints, limited hip range of motion, and tenderness of the lumbar spine with pain upon motion; a June 2020 x-ray of Plaintiff's hips  that showed no evidence of acute fracture, dislocation, joint effusion or soft tissue abnormality; a October 2020 imaging study of Plaintiff's lumbar spine that showed mild sclerosis of the vertebral endplates with minimal disk space narrowing at the L4-L5 level; an October 2020 physical examination during which Plaintiff continued to report generalized pain, worse in the back, but which showed no significant decline in functioning and no muscle ache, arthralgias, or swelling in the extremities or joints, and there were no reports of fatigue, weight loss, or exercise intolerance; Dr. Bagner's October 2020 consultative examination, during which Plaintiff reported diffuse pain and ambulated slowly and with a cane, but Dr. Bagner observed that Plaintiff was able ambulate without a cane, was able to get on and off the examining table without difficulty, got dressed and undressed without assistance, and sat in the seated position without discomfort; Dr. Bagner's findings that Plaintiff had a normal range of motion of the upper extremities and cervical spine; that Plaintiff was able to make a fist and oppose the thumbs; that his grip strength was 5/5 bilaterally; that despite a limited lumbar range of motion, there was no pain on straight leg raising, muscle atrophy of the thigh or calf, or motor or sensory abnormality in the lower extremity; that Plaintiff's knee and ankle reflexes were equal and symmetric bilaterally and that his hips showed a normal range of motion; findings during Plaintiff's February 2021 presentation to an emergency department after using heroin that he had

13

no complaints and was ambulating without mention of a cane; findings on physical examination in March 2021[4] that showed normal range of motion and strength with no focal neurological deficits or midline tenderness, and normal gait and coordination; the notation that, although Plaintiff reported worsening symptoms with pain severity ranging from six to ten on a scale of ten, he denied swelling, numbness, and tingling of the legs; the review of systems was negative for muscle aches, arthralgia, swelling in the extremities and joints, and exercise intolerance; and the notation that Plaintiff had not begun physical therapy nor had he followed up with his primary care physician. R. 26–27. The ALJ also considered years of evidence in connection with Plaintiff's mental impairments, including, *inter alia*, evidence of Plaintiff's history of depression and anxiety, and of detox treatment and relapse in connection with heroin use; the September 3, 2020, consultative psychological examination by Marie Resnikoff, Ph.D., during which Plaintiff reported poor attention and concentration skills as well as symptoms of anxiety that were exacerbated by his chronic pain; Dr. Resnikoff's findings that Plaintiff maintained inconsistent eye contact, spoke in short sentences, and was unable to complete serial sevens, but was able to solve two of four word and math problems, and could recall six digits forward and three digits backward in immediate recall, and presented with good reality ties with no evidence of a thought disorder; the psychologist's estimation that Plaintiff's intellectual functioning, vocabulary skills, and general knowledge fell within the borderline range; the fact that the record reflected no mental health treatment, whether inpatient or outpatient; progress notes showing that Plaintiff generally denied depression and anxiety symptoms; evidence that, despite sleep difficulty, Plaintiff was observed to be alert and oriented with no evidence of cognitive dysfunction during

---

[4] The ALJ mistakenly typed March 2020 instead of March 2021. R. 27 (citing Exhibit 9F/4, R. 782 (reflecting examination on March 18, 2021)).

the period at issue; Plaintiff's demonstrated generally intact cognitive functioning with adequate

skills in memory and comprehension despite some difficulties in delayed memory; and no

evidence of persistent aggressive, antisocial, paranoid, isolative, or agoraphobic behavior and

progress notes showing little to no evidence of visual hallucinations, delusions or paranoia. R.

28. The ALJ went on to explain his RFC findings as follows:

> In light of the preceding analysis, the undersigned finds that the claimant has the
> residual functional capacity set forth above. These findings are consistent with the
> overall record and opinion evidence. Physical exam findings, objective imaging
> studies, and the claimant's treatment for his physical impairments reasonably limits
> him to a reduced range of light exertion. Further, the claimant's mental condition
> does not result in any marked or extreme limitations in his mental functioning.
> While the claimant may have symptoms of anxiety and depression that moderately
> affect[] his mental functioning, this is accounted for in the residual functional
> capacity.

R. 30; *see also* R. 27–28 (summarizing evidence regarding the physical impairments and

concluding that, despite Plaintiff's "ongoing reports of pain and resulting limitations, he has

received appropriate treatment. Objective findings on exams and imaging studies reveal no

significant concerns to explain the degree of pain or functional deficits reported. That is not to

say that he has no limitations affecting his ability to work, but the record as a whole does not

support a greater limitation than work within the less than light range of exertion" and, as to his

mental impairments, "[i]n sum, there is a lack of objective evidence showing the claimant cannot

meet the basic mental demands of simple routine work and make simple work-related

decisions"). In the view of this Court, this record contains substantial evidence to support the

ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*,

186 F.3d at 429.

Plaintiff challenges the ALJ's RFC determination, arguing that the ALJ failed to explain

why he failed to include in the RFC a need for an assistive device, thus frustrating meaningful

review. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 12–17 (citations omitted); *Plaintiff's Reply Brief*, ECF No. 11, pp. 1–7. Plaintiff insists that the record contains evidence that the use of a cane was medically necessary and that the ALJ was therefore required to expressly address that evidence. *Id*. (citations omitted). Plaintiff's arguments are not well taken.

"[An] ALJ need not account for use of a hand-held assistive device in an RFC assessment unless that device is medically required." *Mundo v. Kijakazi*, No. 1:21-CV-517, 2023 WL 2632810, at *5 (M.D. Pa. Mar. 24, 2023). "However, if the claimant makes this threshold showing of medical necessity, then it is incumbent upon the ALJ to directly 'address the evidence concerning Plaintiff's use of' the assistive device." *Figueroa v. Kijakazi*, No. 1:22-CV-194, 2023 WL 2432909, at *10 (M.D. Pa. Mar. 9, 2023) (quoting *Steward v. Comm'r of Soc. Sec*., No. CIV.A 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009)). "[T]he failure to do so may require a remand." *Id*. (citations omitted).

SSR 96-9p addresses this issue:

> **Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, *there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)*. The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9P, 1996 WL 374185, at *7 (S.S.A. July 2, 1996) (emphasis added). "A claimant's testimony that a cane has been prescribed is not enough to meet this burden." *Mundo*, 2023 WL 2632810, at *5 (citations omitted). Similarly, a prescription for an assistive device with "no discussion of its medical necessity" is "insufficient to support a finding that [an assistive device] was medically necessary." *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. Nov. 25, 2002)

16

("Other than that [a prescription and a checked box that an assistive device was required for ambulation], there are multiple references to the fact that appellant uses a cane but no discussion of its medical necessity. The evidence presented by appellant was insufficient to support a finding that his cane was medically necessary.").

In the present case, Plaintiff has not established that his cane was medically necessary. The ALJ noted Plaintiff's hearing testimony that he used a cane and that Dr. Bagner observed Plaintiff ambulating slowly with a cane. R. 26–27. However, the ALJ also noted that Dr. Bagner opined that Plaintiff could ambulate without a cane and that, when Plaintiff was treated in the emergency department in February 2021, he had no complaints and ambulated with no notation that he used a cane. R. 27. The ALJ also considered Dr. Kailasam's opinions,[5] including, the

---

[5] For claims filed after March 27, 2017, the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. §§ 404.1527, 416.927 *with* 20 C.F.R. §§ 404.1520c(a), 416.927c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at §§ 404.1520c(a), 416.920c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2).

April 2021 opinion that Plaintiff required a cane to ambulate effectively, but the ALJ found the

doctor's opinions unpersuasive, explaining as follows:

> In May 2020, Mala Kailasam, M.D., indicated that the claimant has been diagnosed with prolapsed lumbar intervertebral disc disease at L4-L5, chronic lumbar back pain, and obesity (B11F/4). She opined that the claimant can sit, stand, and/or walk for three to six hours per day; bend and squat for three to six hours per day; and has no limitations with climbing, pushing, or pulling (B11F/53-55). In addition, she stated that the claimant can use his hands six to eight hours per day (B11F/54). The undersigned finds Dr. Kailasam's opinion unpersuasive. While her opinion regarding the claimant's exertional limitation is generally consistent with work in between the sedentary and light range of exertion, the record does not contain any of her own treatment notes or clinical findings to corroborate her proposed restrictions. Moreover, her opinion consists mainly of checked boxes on a prefilled form with little to no explanation. The undersigned notes that she is the claimant's physician who had the opportunity to treat and evaluate the claimant. However, her overall opinion, including the claimant's manipulative and postural limitations, is inconsistent with clinical findings by the claimant's rheumatologist (B9F), consultative examiner (B6F), and other medical providers (B7F). Further, her opinion is inconsistent with objective imaging studies and the claimant's activities of daily living. The undersigned finds this opinion unpersuasive.

> In April 2021, Dr. Kailasam assessed more restrictive limitations, noting that the claimant is limited to one to three hours of sitting, standing and walking; cannot perform bending, squatting, or climbing; and cannot perform pushing, pulling, or lifting (B10F/3). Yet, in June 2021, Dr. Kailasam noted that the claimant can lift and carry up to ten pounds frequently and twenty pounds rarely; sit for one hour; and stand/walk for less than one hour; *requires a cane to ambulate effectively*; and can occasionally reach overhead, as well as frequently finger, feel, push, and pull (B13F/7-9). Dr. Kailasam stated that the claimant will be off task twenty five percent and absent from work more than four days per [month] (B13F/7). The

---

The applicable regulations further require the ALJ to articulate his or her "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at §§ 404.1520c(b), 416.920c(b). As previously noted, "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency." *Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021) ("Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors.").

undersigned finds *Dr. Kailasam's April 2021 and June 2021 opinions unpersuasive.*

The difference between her April 2021 opinion noting that the claimant cannot perform any lifting, and her June 2021 assessment that the claimant can lift and carry up to ten pounds frequently make for a rather striking inconsistency given the close proximity to one another. Moreover, her proposed standing and walking restriction of about one hour per day is not supported by imaging studies, physical examinations, or the claimant's activities of daily living. In addition, rheumatology progress notes and clinical findings by the consultative examiner does not show any evidence of significant decline in functioning to support the difference between Dr. Kailasam's May 2020 opinion and her subsequent opinions in 2021. *Overall, there is no support in the record for any of Dr. Kailasam's opinions. Her opinions are not well explained and do not cite to treating records. The undersigned finds her opinions unpersuasive.*

R. 28–29 (emphasis added). The Court finds no error with the ALJ's consideration of Dr. Kailasam's opinions, including her opinion that Plaintiff requires the use of a cane. *See Galette v. Comm'r Soc. Sec.*, 708 F. App'x 88, 91 (3d Cir. 2017) ("As we have explained, forms that 'require[ ] the physician only to check boxes and briefly to fill in blanks . . . are weak evidence at best.'") (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)); *Howze*, 53 F. App'x at 222; *Mundo*, 2023 WL 2632810, at *5; *Crossley v. Kijakazi*, No. 3:20-CV-02298, 2021 WL 6197783, at *11 (M.D. Pa. Dec. 31, 2021) (finding that the ALJ properly evaluated opinions regarding exertional limitations where the ALJ considered, *inter alia*, physical examinations that routinely noted the claimant to have normal range of motion, no tenderness, normal strength, no tremor, no cranial nerve deficit, and normal gait and coordination); *Aponte v. Kijakazi*, No. CV 20-5008, 2021 WL 4963545, at *7 (E.D. Pa. Oct. 25, 2021) (finding that substantial evidence supported the ALJ's finding that a treating opinion was not persuasive under 20 C.F.R. § 404.1520c because it was inconsistent with, *inter alia*, mild findings on "multiple physical examinations" and mild radiographic findings); *Debevits v. Saul*, No. CV 20-600, 2021 WL 2590140, at *4 (W.D. Pa. June 24, 2021) (finding that the ALJ "appropriately assessed Dr.

Kellis' medical opinion in light of these standards" under 20 C.F.R. §§ 404.1520c, 416.920c

where the ALJ concluded that a physician's opinion was not persuasive because "the limitations

[the physician] espoused were not consistent with or supported by other evidence of record" such

as, *inter alia*, the treatment records, for instance, [which] indicated a greater ability to walk, lift,

and stand"); *Koletar v. Kijakazi*, No. 1:21-CV-994, 2022 WL 3598090, at *13 (M.D. Pa. Aug.

23, 2022) (concluding that substantial evidence supported the ALJ's finding a medical opinion

not persuasive because "the examination findings of the longitudinal record are not consistent

with these rather extreme limitations," and the ALJ summarized medical evidence, including

physical examinations that revealed, *inter alia*, stable gait, normal muscle tone, intact sensation,

and normal reflexes except the plantar reflexes that were zero) (internal quotation marks

omitted). The ALJ's consideration and discussion of this evidence reflects that he implicitly

found that a cane was not medically necessary. *See also Diaz v. Comm'r of Soc. Sec.*, 577 F.3d

500, 504 (3d Cir. 2009) (noting that the ALJ "need not employ particular 'magic' words" in

discussing the reasons for the decision) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 & n.3 (3d

Cir. 2004)); *Johnson v. Kuakazi*, No. CV 22-914-SRF, 2023 WL 6387906, at *8 (D. Del. Sept.

29, 2023) (finding that, where the ALJ discussed the objective findings regarding the claimant's

normal gait without the use of a walker and Plaintiff's own statements regarding the same, which

led the ALJ to conclude that the "'medical evidence of record supports that . . . the claimant

sometimes uses a walker, she is able to ambulate without it[,]'" "[i]t can reasonably be inferred

from this conclusion that the ALJ found Plaintiff's use of an assistive device was not medically

necessary, and this conclusion is supported by substantial evidence"). Where, as here, the record

contains no evidence of a prescription containing a description of the cane's medical necessity

and where other record and opinion evidence indicates that Plaintiff could ambulate without the

use of a cane, Plaintiff has not shown that a cane was medically necessary.

Plaintiff, however, insists that a cane is medically necessary because "the record shows that Plaintiff uses a cane to help him walk due to arthritis"; that he "goes through periods where he is bedridden by pain and afterward is only able to ambulate with a cane"; that he "reports daily to occasional use of a cane at the recommendation of his doctor"; and that "his physicians often document that he uses it to walk[.]" *Plaintiff's Memorandum of Law*, ECF No. 9, p. 15 (citations omitted); *see also Plaintiff's Reply Brief*, ECF No. 11, p. 6 (referring to the record citations in *Plaintiff's Memorandum of Law*). Plaintiff's argument is not well taken. In making this argument, Plaintiff relies on his own subjective statements and on evidence dated more than one year prior to his alleged disability onset date. *See Plaintiff's Memorandum of Law*, ECF No. 9, p. 15 (citing R. 340 (reflecting Plaintiff's subjective statement in function report), 348 (same), 408 (same), 782 (reflecting Plaintiff's subjective statement under "Social History"), 786 (same), 790 (same), 794 (same), 798 (same), 896 (reflecting Plaintiff's subjective statement that he walks with a cane due to arthritis), 977 (emergency department record dated February 18, 2019, recording Plaintiff's statement that, although he had been unable to walk, he was at that time able to use a cane to ambulate), 981 (emergency department record dated February 18, 2019, noting that Plaintiff arrived with a cane), (emergency department record dated February 18, 2019, noting Plaintiff ambulated to and from bathroom using a cane), 1007 (duplicate of R. 896)). A claimant's own statements are not sufficient to establish medical necessity under SSR 96-9p; *Mundo*, 2023 WL 2632810, at *5. Moreover, the mere memorialization of a claimant's subjective complaints in a medical record does not transform those complaints into objective findings or a medical opinion. *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform the claimant's subjective complaints into

objective findings simply by recording them in his narrative report[.]") (summarizing *Craig v. Chater*, 76 F.3d 585, 590 n. 2 (4th Cir. 1996)); *Morris v. Barnhart*, 78 F. App'x 820, 824–25 (3d Cir. 2003) ("[T]he mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion.") (citations omitted); *Famularo v. Comm'r of Soc. Sec.*, No. CV 20-1655, 2021 WL 613832, at *7 (D.N.J. Feb. 17, 2021) ("[A] a claimant's own subjective report about her symptoms[] does not become a medical opinion by virtue of being recorded in treatment notes.") (citations omitted). In addition, although an ALJ may consider evidence pre-dating the claimant's alleged disability onset date, *Louis v. Comm'r Soc. Sec*., 808 F. App'x 114, 120 (3d Cir. 2020) (citations omitted), that evidence is not entitled to controlling or, indeed, any particular weight. *Cf. id.* (finding that the ALJ "was entitled to discount" an opinion letter where the opinion was written before the applicate date and alleged onset date and where it was inconsistent with the medical record); *Dennis-Orshak v. Berryhill*, No. 3:18-CV-15987, 2020 WL 4364330, at *4 (D.N.J. July 30, 2020) (finding that the ALJ did not err in giving no weight to report that predated the alleged onset date) (citation omitted). In short, Plaintiff's cited record evidence does not establish that his cane was medically necessary.

Plaintiff's reliance on evidence from Dr. Bagner does not militate a different result. Plaintiff points to Dr. Bagner's observation that Plaintiff ambulated slowly with use of a cane. *Plaintiff's Memorandum of Law*, ECF No. 9, p. 15; *Plaintiff's Reply Brief*, ECF No. 11, pp. 6–7. However, despite this finding, Dr. Bagner nevertheless concluded that Plaintiff "can ambulate without the cane." R. 617. The ALJ expressly noted this observation, finding that it "is generally consistent with the claimant's presentation as described by treating providers in February 2021." R. 27. Plaintiff contends that the ALJ misrepresented the record in this regard, and therefore argues that Dr. Bagner's conclusion was unsupported by the evidence. *Plaintiff's Memorandum*

*of Law*, ECF No. 9, pp. 16–17; *Plaintiff's Reply Brief*, ECF No. 11, pp. 5–6. This Court

disagrees. It is true that the ALJ referred to "treating providers," but it is apparent from a review

of the ALJ's actual discussion that he was referring to the particular providers who had treated

Plaintiff at the emergency department on February 7 and 22, 2021, rather than more generally to

all providers who had treated Plaintiff. R. 27. For example, the ALJ expressly noted that Plaintiff

was treated in the emergency department in February 2021, and that, during treatment, there was

no notation that he ambulated using a cane. *Id*. (citing, *inter alia*, Exhibit B11F/11, R. 826,

reflecting emergency department record dated February 7, 2021). The ALJ, citing emergency

department records dated February 22, 2021, went on to note that a "[p]hysical examination

showed normal musculoskeletal range of motion and strength with no focal

neurological deficits or midline tenderness" and that Plaintiff's "gait and coordination was [sic]

described as normal[.]" *Id*. (citing Exhibit B7F/64–65, 80 (R. 684–85, 700)). The ALJ also

specifically noted that Plaintiff had not seen or followed up with his other treating providers. *See*

*id*. (noting, *inter alia*, that it was noted in March 2021[6] that Plaintiff "had not seen his

rheumatologist since October 2020" and that Plaintiff "had not started physical therapy or

followed up with his primary care physician"). In short, this record—which documents

ambulation without a cane and findings of normal musculoskeletal range of motion and normal

gait and coordination—provides substantial support for the ALJ's crediting of Dr. Bagner's

finding that Plaintiff was able to ambulate without using a cane.[7]

---

[6] As previously noted, the ALJ mistakenly typed March 2020 instead of March 2021. R. 27
(citing Exhibit 9F/4, R. 782 (reflecting examination on March 18, 2021)).
[7] For these reasons, *Jordan v. Kijakazi* No. 1:21-CV-01975, 2023 WL 2616099 (M.D. Pa. Mar.
23, 2023) (remanding where the ALJ failed to sufficiently explain a conclusory finding that the
use of a cane was not medically necessary) is inapposite and Plaintiff's reliance on this case,
*Plaintiff's Memorandum of Law*, ECF No. 9, pp. 16–17 (arguing—inaccurately—that the ALJ
found Dr. Bagner's "unexplained" finding that Plaintiff could ambulate without a cane was

To the extent that Plaintiff nevertheless insists that his "own treating sources repeatedly documented his use of a cane to ambulate[,]" Plaintiff again relies on his own subjective statements and on evidence dated more than a year before his alleged disability onset date, which is unavailing for the reasons already discussed. *See Plaintiff's Memorandum of Law*, ECF No. 9, p. 16 (citing R. 27, 616, 782, 786, 790, 794, 798, 896, 981–92, 1007, 1099–1101 (containing Dr. Kailsam's June 2021 opinion)). Plaintiff's reliance on Dr. Kailasam's opinions, *id*. at 15–16; *Plaintiff's Reply Brief*, ECF No. 11, p. 6, is similarly unavailing: This Court has previously explained that substantial evidence supports the ALJ's discounting of these opinions, which were not well explained, were not supported by treating records, and were inconsistent with other record evidence. R. 28–29.

Plaintiff also accuses the ALJ of cherry picking evidence to support the denial of benefits and ignoring material evidence favorable to Plaintiff's claim. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 15–17; *Plaintiff's Reply Brief*, ECF No. 11, pp. 6–7. However, Plaintiff again relies on evidence that this Court has already addressed—*i.e*., Dr. Bagner's findings and Dr. Kailasam's opinions, Plaintiff's subjective statements memorialized in medical records, and evidence pre-dating the alleged onset date. *See id*. To the extent that the ALJ did not expressly discuss medical records containing Plaintiff's subjective statements about his us of a cane or records dated more than one year prior to Plaintiff's alleged disability onset date, any such error is harmless and does not require remand for the reasons detailed above. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally

consistent with only "a single emergency room visit"); *Plaintiff's Reply Brief*, ECF No. 11, p. 6, is unavailing.

must explain why the erroneous ruling caused harm."); *Rutherford*, 399 F.3d at 553 (finding that

"a remand is not required here because it would not affect the outcome of the case").

At bottom, Plaintiff has not made the threshold showing that a cane was medically

necessary and substantial evidence supports the ALJ's implicit finding that Plaintiff's use of a

cane was not medically necessary. *See Howze*, 53 F. App'x at 222; *Johnson*, 2023 WL 6387906,

at *8; *Figueroa*, 2023 WL 2432909, at *10; *Mundo*, 2023 WL 2632810, at *5. Accordingly, the

ALJ did not commit reversible error in failing to expressly explain why he did not include the

use of a cane in the RFC. *See id.*; *see also Shinseki*, 556 U.S. at 409–10; *Rutherford*, 399 F.3d at

553.

### B.    Step Five

Plaintiff also challenges the ALJ's step five determination, arguing that the

Commissioner failed to carry his burden at that stage because the hypothetical posed to the

vocational expert, which included the ALJ's RFC determination, was not a full and accurate

representation of all Plaintiff's mental limitations and because the vocational expert's testimony

created a conflict that was unresolved by the ALJ. *Plaintiff's Memorandum of Law*, ECF No. 9,

pp. 18–22; *Plaintiff's Reply Brief*, ECF No. 11, pp. 8–12. For the reasons that follow, this Court

disagrees.

At step five, an ALJ must determine, considering the claimant's RFC and vocational

profile, whether the claimant can perform other jobs that exist in significant numbers in the

national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). Unlike at the first four steps of the

sequential evaluation process, it is the Commissioner who bears the burden of proof at step five.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Johnson v. Comm'r of Soc. Sec.*,

529 F.3d 198, 205 (3d Cir. 2008) (citing *Rutherford*, 399 F.3d at 551). "'Advisory testimony

from a vocational expert is often sought by the ALJ for that purpose [of determining whether other jobs exist in significant numbers in the national economy that the claimant could perform] . . . and factors to be considered include medical impairments, age, education, work experience and RFC.'" *Id*. at 205–06 (quoting *Rutherford*, 399 F.3d at 551). "Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert." *Podedworny,* 745 F.2d at 218. "Usually, the ALJ will ask whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy." *Zirnsak* 777 F.3d at 614 (citing *Podedworny*, 745 F.2d at 218). "While 'the ALJ must accurately convey to the vocational expert all of a claimant's credibly established limitations,' . . . '[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant.'" *Smith v. Comm'r of Soc. Sec*., 631 F.3d 632, 634 (3d Cir. 2010) (quoting *Rutherford*, 399 F.3d at 554). "[T]o accurately portray a claimant's impairments, the ALJ must include all 'credibly established limitations' in the hypothetical. *Zirnsak*, 777 F.3d at 614 (citing *Rutherford*, 399 F.3d at 554). Credibly established limitations are limitations "that are medically supported and otherwise uncontroverted in the record." *Rutherford*, 399 F.3d at 554. "Limitations that are medically supported but are also contradicted by other evidence in the record may or may not be found credible—the ALJ can choose to credit portions of the existing evidence but cannot reject evidence for no reason or for the wrong reason." *Id*. (citations and internal quotation marks omitted). A "vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the [ALJ's hypothetical] question accurately portrays the claimant's individual physical and mental" limitations. *Podedworny*, 745 F.2d at 218. Stated differently, "[a] hypothetical question must

reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence." *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

In the case presently before the Court, the hypothetical posed by the ALJ to the vocational expert assumed a claimant with Plaintiff's vocational profile and the RFC found by the ALJ. R. 25, 56–57, 59. The vocational expert responded that the jobs of routing clerk, mail clerk, and laundry worker could be performed by such an individual. R. 57–59. For the reasons discussed earlier in this decision, this hypothetical sufficiently captured Plaintiff's credibly established limitations and therefore supported the ALJ's determination at step five. *See Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218.

Plaintiff, however, contends that the hypothetical was flawed because it did not accurately reflect Plaintiff's mental limitations. *Plaintiff's Memorandum of Law*, ECF No. 9, pp. 18–22; *Plaintiff's Reply Brief*, ECF No. 11, pp. 8–12. Plaintiff specifically notes that, at step three of the sequential evaluation, the ALJ found that Plaintiff's depressive symptoms "would limit his ability to perform detailed or complex tasks." *Plaintiff's Memorandum of Law*, ECF No. 9, p. 19 (citing R. 24) (internal quotation marks omitted). Plaintiff argues that the ALJ, without explanation, "did not specify as much to the vocational expert, instead rewording Plaintiff's RFC to merely reflect that he remains capable of 'performing simple, routine tasks.'" *Id*. (citing R. 25). Plaintiff insists that "[t]his is not merely a matter of semantics" and that the job descriptions of the three jobs identified by the vocational expert, and ultimately relied up by the ALJ at step five—*i.e.*, routing clerk, mail clerk, and laundry worker—conflict with Plaintiff's mental abilities. *Id*. at 19–21. Plaintiff specifically contends that the mental limitation in the hypothetical posed to the vocational expert (and contained in the RFC determination) conflicts with the

27

general educational development ("GED") reasoning levels contained in the Dictionary of

Occupational Titles ("DOT"). *Id*. at 20–21 (arguing that Plaintiff's mental limitations are

incompatible with jobs with reasoning levels two and three, which are the levels of the jobs

identified by the vocational expert). Plaintiff further argues that "remand would still be necessary

if the vocational expert had been made aware of Plaintiff's limited ability to perform complex or

detailed tasks since the ALJ erred by relying on testimony which contained an unresolved

conflict with the DOT." *Id.* at 21.

      The Commissioner disagrees, arguing that findings at earlier steps in the sequential

evaluation do not necessarily translate into a specific finding at step four or five of the sequential

evaluation process. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 10, p. 16

(citing, *inter alia*, *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209–11 (3d Cir. 2019)). The

Commissioner further argues that the ALJ fully considered Plaintiff's mental impairments and

explained why they did not warrant any further limitations in the RFC. *Id*. at 16–18. The

Commissioner goes on to argue that, contrary to Plaintiff's contention, the ALJ found that there

were at least two jobs that Plaintiff could perform with a GED reasoning level two—routing

clerk and laundry worker—and that there is no conflict between the definition of reasoning level

two in the DOT and work involving simple tasks. *Id*. at 18–19 (citations omitted).

      In reply, Plaintiff first distinguishes *Hess*, contending that the dispute in that case related

to an ALJ's finding of  moderate limitations, whereas the ALJ in the instant case made "specific

findings beyond the general assignment of a 'moderate' rating, at Step 3" and that the ALJ did

not convey those limitations to the vocational expert, thus improperly leaving the vocational

expert "in the dark[.]" *Plaintiff's Reply Brief*, ECF No. 11, pp. 8–9 (citations omitted). Plaintiff

also argues that, "[t]o the extent [that the Commissioner] means to argue that the ALJ believed a

limitation to simple, routine tasks adequately reflected Plaintiff's limited ability to perform detailed or complex tasks, the ALJ's decision does not articulate any such reasoning" and, regardless, "the vocational expert evidently did operate under that conclusion." *Id*. at 10. Plaintiff further contends that the issue "is not whether detailed instructions and tasks with multiple variables could be compatible with an RFC for simple, routine tasks, but whether the ALJ erred by failing to provide the requisite specificity to apprise the vocational expert of the exact nature of Plaintiff's mental limitations in advance of that testimony." *Id*. at 10–11. Plaintiff goes on to insist that the ALJ failed to resolve an inconsistency between the vocational expert's testimony and the DOT. *Id*. at 11. The Court disagrees.

By way of background, "[t]he qualification categories listed by the DOT for each job include the job's Strength level, General Educational Development ("GED") level, and its Specific Vocational Preparation ("SVP") level." *Zirnsak*, 777 F.3d at 616 (quoting Appendix C, DOT). "GED measures 'those aspects of education (formal and informal) which are required of the worker for satisfactory job performance.'" *Id*. "GED is broken into three categories: (1) reasoning development, (2) mathematical development, and (3) language development. . . . Reasoning levels in the DOT range from level 1 to level 6." *Id*. (citing Appendix C, DOT). GED reasoning level 1 applies "commonsense understanding to carry out simple one- or two-step instructions" in "standardized situations with occasional or no variables in or from these situations encountered on the job." Appendix C, 1991 WL 688702. Reasoning level 2 applies "commonsense understanding to carry out detailed but uninvolved written or oral instructions" in "problems involving a few concrete variables in or from standardized situations." *Id*. Reasoning level 3 applies "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" in "problems involving several concrete variables in or from standardized

situations." *Id*. "SVP levels, on the other hand, measure the skill level necessary to perform a particular job." *Zirnsak*, 777 F.3d at 616 (citing SSR 00–4p, 2000 WL 1898704, at *3 (Dec. 4, 2000)). "SVP levels in the DOT range from level 1 to level 9" and "[t]he DOT skill levels correspond with the second source of information relied on by the Commissioner: the CFR." *Id*. (citing SSR 00–4p). The CFR categorizes occupations into three classes: unskilled, semi-skilled, and skilled. 20 C.F.R. § 404.1568(a)–(c). "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time[,]" while "[s]emi-skilled work is work which needs some skills but does not require doing the more complex work duties," and "[s]killed work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced."  *Id*. at § 404.1568(a), (b), (c). "[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4p, 2000 WL 1898704, at *3.[8]

In the present case, the Court is not persuaded that the ALJ erred when he noted at step three that, *inter alia*, Plaintiff's depressive symptoms "would limit his ability to perform detailed or complex tasks[,]" R. 24, and went on to find at step four that Plaintiff was limited to, *inter alia*, "simple, routine tasks and can make simple work-related decisions." R. 25. Although Plaintiff insists that this finding involves more than mere semantics, the Court is at loss to understand Plaintiff's contention that a limitation in the RFC to simple, routine tasks and simple

---

[8] In the present case, the jobs identified by the vocational expert and ultimately relied upon by the ALJ are as follows: routing clerk, which is unskilled, SVP 2, with a reasoning level 2 (R. 31, 58 – 59; DICOT 222.687-022); mail clerk, which is unskilled, SVP 2, with a reasoning level 3 (R. 31, 58; DICOT 209.687-026); and laundry worker, which is unskilled, SVP 2, with a reasoning level 2 (R. 31, 59; DICOT 302.685-010).

work-related decisions does not adequately capture a limited ability to perform detailed or complex tasks. In other words, Plaintiff's argument appears to be a distinction without a difference.

In any event, as the Commissioner noted, the Court of Appeals for the Third Circuit has instructed that "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways." *Hess*, 931 F.3d at 209. Because the RFC is the most that a claimant can do despite his limitations, the RFC "'requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories'" and, "unlike the findings at steps two and three, the RFC 'must be expressed in terms of work-related functions[.]'" *Id*. (quoting SSR 96-8P, at *4, 6). "In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Id*. Plaintiff insists that *Hess* is distinguishable because that case involved a challenge to the ALJ's finding of moderate limitation, whereas the instant case is based on Plaintiff's challenge to the ALJ's specific finding at step three that Plaintiff's depressive symptoms "would limit his ability to perform detailed or complex tasks." The Court declines to adopt such a narrow view of *Hess*. It is true that the Third Circuit noted that the parties in *Hess* disputed "whether an ALJ must use specific words in stating a limitation that will be employed at steps four and five of the disability analysis, based on the functional limitation findings at steps two and three, *such as* a finding of 'moderate'" limitations in a broad area of functioning. *Id*. at 208-09 (emphasis added). However, the Court went on to expressly conclude, as detailed above, that "the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Id*. at 209. The Third Circuit explained that the

Commissioner's regulations require an ALJ "to offer 'a narrative discussion describing how the evidence supports each" limitation at step four of the disability analysis[,]" which "suggests [that] *a wide range of limitation language is permissible, regardless of what the ALJ found at earlier steps of the analysis, so long as the chosen limitation language is explained*." *Id*. (emphasis added) (citations omitted). The Court's discussion in this regard belies Plaintiff's assertion that *Hess*'s application is limited to only those cases that challenge a failure to incorporate in the RFC a moderate limitation found at steps two or three of the sequential evaluation process.

Notably, in this case, the ALJ provided the explanation that *Hess* requires:

With regard to the claimant's mental impairments, the claimant has a history of depression and anxiety. Progress notes document the claimant's reports of depression, difficulty falling and staying asleep, and memory lapses or loss (B9F/5, 17, 31). In addition, there is documented evidence [of] detox treatment and relapse of heroin use (B9F/5; B11F/9; B12F/89), with an emergency room visit (B7F/28; B12F/148). During a consultative examination in September 2020, the claimant reported poor attention and concentration skills (B5F), as well as symptoms of anxiety that were exacerbated by his chronic pain (B5F/3). The consultative examiner, Anna Marie Resnikoff, Ph.D., noted that the claimant maintained inconsistent eye contact, spoke in short sentences, and was not able to complete a serial sevens. She estimated that the claimant's intellectual functioning, vocabulary skills, and general knowledge was within the borderline range. However, Dr. Resnikoff indicated that the claimant was successful in solving two out of four-word and math problems; recalled six digits forward and three digits backward in immediate recall; and presented with good reality ties with no evidence of a thought disorder (B5F/2-3). Moreover, the claimant denied any prior history of anxiety and stated it is due to his distress and the daily pain he continues to experience (B5F/3).

The record does not describe mental health treatment on either an inpatient or outpatient basis (B5F; B6F/2). Progress notes show the claimant generally denied depression and anxiety symptoms on exams (B5F/2; B7F/79; B9F/8). Even though there is documented evidence [of] sleep difficulty, he was observed to be alert and oriented with no evidence of cognitive dysfunction during the period at issue. Moreover, the claimant demonstrated generally intact cognitive functioning with adequate skills in memory and comprehension despite some difficulties in delayed memory (B5F/2). The record does not describe persistent aggressive, antisocial, paranoid, isolative, or agoraphobic behavior. Progress notes showed little to no evidence of visual hallucinations, delusions or paranoia. Further, there is no

evidence of inpatient admission or psychiatry care in response to an increase in stress or mental health symptoms. *In sum, there is a lack of objective evidence showing the claimant cannot meet the basic mental demands of simple routine work and make simple work-related decisions.*

R. 28 (emphasis added). Based on record, the Court cannot agree with Plaintiff that the ALJ left the vocational expert "in the dark" when the ALJ accurately conveyed the RFC limitation of "performing simple, routine tasks and can make simple work-related decisions" and explained the basis for such limitation.

Nor can the Court conclude that a mental limitation to "simple, routine tasks and . . . simple work-related decisions" is inconsistent with the DOT definitions for routing clerk and laundry worker, occupations that require reasoning level 2. The Third Circuit has held that a job with a reasoning level 2 does not "contradict the mandate that [the claimant's] work be simple, routine and repetitive." *Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004); *see also Jones v. Astrue*, 570 F. Supp. 2d 708, 716 (E.D. Pa. 2007) (finding no conflict between simple and routine tasks and the definition of reasoning level 2), *aff'd*, 275 F. App'x 166, 168 (3d Cir. 2008)). Accordingly, the Court concludes that the ALJ posed a complete hypothetical to the vocational expert that properly captured all the Plaintiff's limitations as found by the ALJ, including limitations resulting from his mental impairments; the ALJ was therefore entitled to rely on the vocational expert's testimony at step five. *See id.*; *cf. Money*, 91 F. App'x at 215; *Dance v. Comm'r of Soc. Sec.*, No. 1:20-CV-03141-NLH, 2021 WL 3144696, at *9 (D.N.J. July 26, 2021) (stating that "[t]his Court has also addressed - and rejected - " the claimant's argument that "the ALJ erred by finding Plaintiff to be capable of performing two of the jobs . . . because the DOT lists these jobs as having a reasoning level of 2, which is a higher level than the RFC's requirement that Plaintiff be limited to jobs with only simple instructions and tasks") (citations omitted); *Soto v. Comm'r of Soc. Sec.*, No. CV 18-14165, 2020 WL 7022652, at *8 (D.N.J. Nov.

33

30, 2020) ("Where, as here, plaintiffs were limited to simple, repetitive tasks, courts have repeated[ly] found that the plaintiffs are at least suited for jobs that require Reasoning Level 2.") (citations omitted); *Montgomery v. Berryhill*, No. CV 17-0770, 2018 WL 1317856, at *5 (D.N.J. Mar. 14, 2018) (finding that "the ALJ's reliance on vocational expert testimony was 'inherently reasonable' even though the claimant argued that "the ALJ needed an explanation from the [vocational expert] as to how the identified jobs—all with a DOT reasoning level of two, and thus allegedly beyond Plaintiff's mental abilities—comported with Plaintiff's deficiencies" because "Third Circuit precedent has established that level two jobs do not outright conflict with a requirement for simple, routine, and repetitive work") (citations omitted). In short, the Court is not persuaded that remand is required on this basis.

## VI.    CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  October 31, 2024                    *s/Norah McCann King*
                                         NORAH McCANN KING
                                         UNITED STATES MAGISTRATE JUDGE